UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER R. DANIELL,

    Plaintiff,

v.                                                  Case No: 8:15-cv-1563-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff, Jennifer R. Daniell, seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

**A. Procedural Background**

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on May 12, 2010. (Tr. 13.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 13.) Plaintiff then requested an administrative hearing. (Tr. 13.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 13.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 10–25.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–5.)

Plaintiff then filed a complaint with the U.S. District Court for the Middle District of Florida, *Daniell v. Commissioner of Social Security*, No. 8:12-cv-00585-EAJ. (Tr. 429–447.) Upon review, the Commissioner's decision was reversed, and the case was remanded to the Commissioner for further proceedings. (Tr. 448, 450–454.) After a hearing, at which Plaintiff appeared and testified, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 343–363.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1980, claimed disability beginning on May 7, 2010. (Tr. 346, 354.) Plaintiff has a college education and obtained a bachelor's degree in organizational management with a minor in human resources. (Tr. 20, 31.) Plaintiff's past relevant work experience included work as a patient financial counselor, medical assistant, and admitting clerk. (Tr. 19, 32–34.) Plaintiff alleged disability due to idiopathic scoliosis. (Tr. 16.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 7, 2010, the alleged onset date. (Tr. 348.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: scoliosis, osteoarthrosis, and obesity. (Tr. 349.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 350.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, including the ability to lift or carry twenty pounds occasionally, lift or carry

ten pounds frequently, stand or walk for six hours and sit for six hours in an eight-hour workday, but she can only occasionally perform each of the postural activities, including climbing ladders, ropes, scaffolds, ramps, or stairs; balancing; stooping; crouching; kneeling; and crawling.[1] (Tr. 350–351.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 351–352.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a financial services representative. (Tr. 354.) Given Plaintiff's background and RFC, the VE also testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small products assembler, ticket seller, and eyeglass frames assembler. (Tr. 355.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 355–356.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

---

[1] In his decision, the ALJ found that Plaintiff could perform light work with additional limitations. (Tr. 350–351.) However, the Commissioner's memorandum refers to sedentary work, and the Commissioner concedes that "the ALJ's decision does not properly reflect the RFC finding for only sedentary work or the VE testimony at the supplemental hearing." The Commissioner argues that this represents harmless error, as "the VE testified that Plaintiff could perform sedentary work as a financial services representative and/or admitting clerk." (Dkt. 118 at 11 n.1.) As Plaintiff does not challenge the ALJ's finding, this issue is waived by failure to raise it on appeal. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (explaining that a claimant waives an argument not raised in the district court).

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400

(11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to afford proper weight to the opinions of treating sources; and (2) the ALJ failed in making a proper credibility determination. For the reasons that follow, these contentions do not warrant reversal.

### A. Medical Opinions

Plaintiff contends that the ALJ erred in weighing the medical opinions of her treating physicians. Specifically, Plaintiff contends that the ALJ did not afford sufficient weight to the medical opinions of Dr. Juan S. Uribe, a neurosurgeon, and Ms. Melissa Carmichael, an advanced registered nurse practitioner ("ARNP") in Dr. Uribe's office, and did not have good cause for disregarding their opinions.

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. 20 C.F.R. § 404.1527(a)(2). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). To the extent that an ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). Typically, the ALJ must afford the opinion of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists when the doctor's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179. Ultimately, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In evaluating the opinions of Dr. Uribe and Ms. Carmichael, the ALJ stated:

> In terms of opinion evidence, two treating sources have opined that the claimant experiences disabling symptoms. Specifically, in September 2011, Ms. Carmichael, a nurse practitioner from Juan Uribe, M.D.'s office, and then in April 2014, Dr. Uribe himself, each opined, in part, that the claimant is incapable of even sitting, standing, and walking a combined 8 hours per workday (Exs. l4F, 24F). Although treating sources, little weight is given to these assessments because the severity of the limitations is inconsistent with the objective evidence of record as well as Dr. Uribe's own comments in his treatment notes. For example, examinations conducted both before and after the claimant's surgery show normal gait, the ability to toe and heel walk, and 5/5 strength throughout (e.g., 12F/2, 15F). Moreover, as noted above, Dr. Uribe has regularly noted post-surgery that the claimant is doing very and extremely well and as soon as one month following surgery that she only had minimal pain (Exs. 11F, 18F, 22F), comments completely inconsistent with Ms. Carmichael's and Dr. Uribe's current opinions.

(Tr. 353.)

As noted by the ALJ, Ms. Carmichael completed a Physical Residual Functional Capacity Questionnaire in September 2011 wherein she opined that Plaintiff's pain and other symptoms related to her scoliosis could be expected to frequently interfere with her ability to perform work-related tasks. (Tr. 659.) In the questionnaire, Ms. Carmichael indicated that Plaintiff was capable of tolerating low-stress jobs, frequently lifting or carrying up to ten pounds, and occasionally lifting or carrying twenty pounds. (Tr. 659–663.) Ms. Carmichael further opined that Plaintiff was limited to standing or walking for less than two hours in an eight-hour workday, sitting for about two hours in an eight-hour workday, and could rarely twist, stoop, crouch, climb ladders, and climb stairs. (Tr. 659–663.)

However, nurse practitioners are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). As such, their opinions are not considered "medical opinions" and cannot establish the existence of an impairment, although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Crawford v. Comm'r of*

*Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). Notably, because nurse practitioners are not acceptable medical sources, their opinions are not entitled to substantial weight. *Id.*

In weighing the medical opinions, the ALJ gave great weight to the portion of Ms. Carmichael's opinion regarding Plaintiff's mental impairments, as her opinion was consistent with Plaintiff's treatment notes and opinions of other sources in the record. (Tr. 350.) However, the ALJ afforded little weight to the portion of Ms. Carmichael's opinion regarding the severity of Plaintiff's physical limitations. (Tr. 353.) The ALJ explained his reasons for affording little weight to Ms. Carmichael's opinion, finding that the severity of the limitations provided by Ms. Carmichael was inconsistent with the objective medical evidence. (Tr. 353.)

As noted above, the opinions of nurse practitioners are not entitled to substantial weight, and therefore the ALJ was not required to afford any weight to Ms. Carmichael's opinion. Nevertheless, the ALJ properly considered her opinion as a treating source but found good cause to afford the opinion limited weight, after considering the evidence as a whole, because the severity of the limitations in her opinion was inconsistent with the objective medical evidence. (Tr. 353.) As discussed below, the ALJ's reasons are supported by substantial evidence. Therefore, the ALJ did not err in affording less than substantial weight to Ms. Carmichael's opinion.

In April 2014, Dr. Uribe completed a Medical Opinion Form wherein he opined that Plaintiff was limited to sitting and standing for one hour in an eight-hour workday, could occasionally lift or carry up to ten pounds, and could infrequently lift or carry up to twenty pounds. (Tr. 763–765.) Dr. Uribe noted that he had been Plaintiff's treating neurosurgeon since 2010. Therefore, Dr. Uribe is a treating physician whose opinion is entitled to great weight, unless good cause is shown to the contrary.

In weighing Dr. Uribe's opinion, the ALJ explained that he afforded limited weight to the opinion based on the following reasons: (1) the severity of the limitations provided by Dr. Uribe was inconsistent with the objective evidence of record; and (2) the severity of the limitations provided by Dr. Uribe was inconsistent with Dr. Uribe's own comments in his treatment note. (Tr. 353.) The ALJ then referenced treatment notes from Dr. Uribe following Plaintiff's January 2011 surgery in which Dr. Uribe noted "dramatic improvement of the scoliotic curve," no evidence of hardware failure, intact fusion, stable neurological examination, and improvement in pain levels. (Tr. 298, 692, 694, 698, 743.) *See Winschel*, 631 F.3d at 1179 (providing that good cause exists to discount the opinion of a treating physician when the physician's opinion is conclusory or inconsistent with the physician's own medical records).

In particular, Plaintiff challenges the ALJ's evaluation of Dr. Uribe's opinion that Plaintiff "could not sit or stand for long enough to work at the light or even the sedentary level" and was subject to more severe postural limitations than the ALJ imposed. (Dkt. 17 at 16–17.) However, "[a]n opinion on [a claimant's] RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources." *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(2)). As such, the ALJ was required to consider Dr. Uribe's opinion, but he was not required to adopt his conclusions or give special weight to his opinion as it relates to Plaintiff's RFC. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner . . . is excluded from the definition of a medical opinion and is not given special weight, even if it is offered by a treating source."). Further, as discussed below, Dr. Uribe's post-surgery treatment notes consistently indicate "dramatic improvement" and the absence of abnormal exam results, which the ALJ found to be inconsistent with the severe limitations imposed

by Dr. Uribe. In light of the above, the ALJ properly afforded little weight Dr. Uribe's opinion and provided adequate reasoning for doing so.

### B. Credibility

Plaintiff contends that the ALJ erred in discrediting her testimony. Specifically, Plaintiff contends that the ALJ did not provide a persuasive justification for the adverse credibility determination.

In addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from the condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Id.*; *Wilson*, 284 F.3d at 1225.

The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt*, 921 F.2d at 1223. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *see also Holt*, 921 F.2d at 1223 ("[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d. at 1562.

When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3). The credibility determination does not need to cite particular phrases or formulations. However, it cannot merely be a broad rejection that is not enough to enable the reviewing court to conclude that the ALJ considered the medical condition as a whole. *Dyer*, 395 F.3d at 1210.

In evaluating Plaintiff's subjective complaints of pain, the ALJ found that the objective medical evidence did not fully support her reported symptoms or her allegations regarding her pain level. (Tr. 352.) Specifically, the ALJ noted that the medical records showed normal exam results and consistent reports that Plaintiff was doing well and showing dramatic improvement. (Tr. 352–353.) Upon review of the record, the Court finds that the ALJ's findings are consistent with the medical evidence of record. Notably, the most significant medical event in the record is Plaintiff's extensive fusion surgery in January 2011 related to Plaintiff's scoliosis and mid-back pain. (Tr. 306, 352.) However, the medical records dated after the surgery consistently note improvement, although Plaintiff reported some pain during follow-up visits.

In his decision, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 351–352.) The ALJ then proceeded to explain the "multiple reasons" for finding Plaintiff' allegations only partially credible, stating:

> First, although the claimant alleges debilitating side effects as a result of her medication, including napping multiple times per day, her treatment notes do not contain complaints consistent with this allegation, which would be expected with severe nature of her alleged side effects. Furthermore, the objective evidence of

> record fails to fully support her allegations regarding her pain level.  For example, an examination only one week before her surgery, showed that, even pre-surgery, she had a normal gait, posture, and strength and was able to toe and heel walk (Ex. 12F).  Moreover, [t]he treatment records following surgery regularly indicate that she was doing very well (e.g., 11F, 18F).  Finally, although the claimant's testified that rods that fractured in her back in 2013 and 2014 have severely increased her pain level, the evidence does not fully support this allegation.  For example, her 2013 treatment notes indicate that the fracture is most likely not causing the claimant's pain (Ex. 22F) and her 2014 notes show that although the "pop" she heard caused increased pain, she reported that the pain has subsequently resolved (Ex. 23F).

(Tr. 352.)  The ALJ further chronicled Plaintiff's medical history, both before and after Plaintiff's spinal surgery.  (Tr. 352–353.)

In evaluating a disability, the ALJ must consider all of a claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529(a); *see also* 20 C.F.R. § 404.1528(a) (defining "symptoms" as the claimant's own description of his or her physical or mental impairment).  "[C]redibility determinations are the province of the ALJ."  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *see Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) ("Credibility determinations about subjective testimony are generally reserved to the ALJ.").  As such, the ALJ may decide not to credit such testimony, but "he must articulate explicit and adequate reasons for doing so."  *Holt*, 921 F.2d at 1223.

In his decision, the ALJ discredited Plaintiff's allegations as to the debilitating side effects of her medication.  Specifically, the ALJ found that Plaintiff's treatment notes "do not contain complaints consistent with this allegation, which would be expected with severe nature of her alleged side effects."  (Tr. 352.)  As noted by the ALJ, and conceded by the Commissioner, Plaintiff did not complain about her medication side effects during visits with her treating sources.  (Dkt.

17 at 22.) Although Plaintiff noted the side effects on reports she completed as part of her disability application, this is insufficient to establish error.

Side effects are not a significant problem that the ALJ must discuss unless there are complaints to physicians and concerns expressed by the physicians. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (finding that "a claimant's failure to report side effects to his physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record"); *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) (finding that the record included no evidence that the plaintiff consistently complained to her doctors of any side effects). Therefore, the ALJ did not err in discounting Plaintiff's testimony based on the lack of complaints to physicians regarding her medication side effects.

In regard to the remainder of the credibility determination, the Court finds that the ALJ's reasons are support by substantial evidence, as the objective medical evidence aligns with the recitation of Plaintiff's medical treatment provided by the ALJ in his decision and supports the ALJ's findings as to the severity of Plaintiff's alleged symptoms. According to the medical evidence, Plaintiff was diagnosed with idiopathic scoliosis in 2002 and underwent spinal fusion in January 2011. (Tr. 221–225, 247, 303–306, 315–319.) Prior to surgery, exam results showed normal gait and posture, the ability to walk on her heels and toes, and full strength in all four extremities. (Tr. 304, 306, 314.) However, Plaintiff complained of pain in her mid-back and left shoulder and wished to proceed with the surgery. (Tr. 304.) The month following her surgery, exam results showed that Plaintiff was doing "very well," had minimal pain, and reported a significant decrease in pain due to pain medications. (Tr. 301.) Exam results indicated no acute findings, an ability to ambulate without assistance, and no hardware failure. (Tr. 284, 288.)

Plaintiff further reported minimal back pain, no numbness, and no weakness, although she reported pain in her right hip. (Tr. 303.)

In March 2011, exam results showed normal range of motion, normal strength, no back pain, no muscle pain, no joint pain, and no tenderness, as well as no loosening of hardware and decreased scoliosis compared to her 2010 results before surgery. (Tr. 269, 280.) In April 2011, exam results showed no lucency of screws, correction of scoliotic deformity, no subsidence of the surgical device, no significant changes, no evidence of hardware failure, no evidence of loosening, and no evidence of fracture. (Tr. 279, 299–300.) Dr. Uribe noted that Plaintiff was "doing very well." (Tr. 702.) In July 2011, Plaintiff complained of tightness and spasms in her neck, but it was noted that she "continues to do very well," showed "dramatic improvement," and had no evidence of hardware failure. (Tr. 298.) Plaintiff complained of an uneven feeling in her legs, but she reported that she was otherwise happy with her recovery. (Tr. 700.) In September 2011, Plaintiff reported increased pain since her last visit. However, exam results showed no evidence of misplaced screws, no hardware failure, no cage subsidence, and no fractures. (Tr. 696.) Dr. Uribe again noted a "dramatic improvement." (Tr. 696.)

In March 2012, Plaintiff complained of back pain after falling down two steps and reported some numbness and tingling in her groin area and legs that continued from before her surgery. (Tr. 665.) Plaintiff indicated that she did not want pain medications. (Tr. 665.) However, exam results after the incident showed full strength in her lower extremities, intact alignment, no evidence of new or acute process, no evidence of hardware failure, no fracture, no loosening of screws, and no obvious acute abnormalities. (Tr. 665, 671, 693, 756.) Dr. Uribe further noted that Plaintiff was "progressing as expected." (Tr. 665.) Exam results also showed no significant interval changes since July 2011. (Tr. 758–759.) In July 2012, exam results showed that Plaintiff

was doing "very well" and reported doing much better since her fall in March. (Tr. 691.) Plaintiff reported that she was "getting around better" and ambulating without assistance, and exam results showed no evidence of any new fractures or any acute changes. (Tr. 691–692.) Exam results further showed that her hardware was intact and that her fusion appeared stable. (Tr. 691–692.)

In February 2013, Plaintiff reported feeling a "pop" in her back when she bent over to pick something up and reported feeling pain in her left lower back. (Tr. 745.) Exam results showed a fractured rod. (Tr. 745.) However, further testing conducted the following month revealed that she was completely fused in that area and throughout all the interbody levels. (Tr. 743.) Indeed, in March 2013, Plaintiff reported a slight improvement since her last visit. (Tr. 743.) Dr. Uribe stated that he did not feel that Plaintiff was unstable in any way and noted that she can perform or resume all activities as needed. (Tr. 743.) He also referred Plaintiff to pain management for selective, localized injections to alleviate any residual pain. (Tr. 743.)

During a follow-up visit in June 2013, Plaintiff complained of pinpoint pain on her left side and believed the pain was caused by a fractured rod. (Tr. 741.) However, Dr. Uribe noted that Plaintiff's CT demonstrated complete fusion and therefore found no need for intervention for the broken rod. Dr. Uribe further explained that the broken rod was not likely the cause of her pain but offered to remove the hardware, despite the complete fusion shown in the exam, if Plaintiff felt the need. (Tr. 741.) Dr. Uribe noted that Plaintiff's exam results remained stable, without any evidence of further hardware failure. (Tr. 741.)

Finally, in March 2014, Plaintiff complained of left buttock pain but informed Dr. Uribe that her back pain previously reported from the "pop" in her back had since resolved. (Tr. 760.) Dr. Uribe noted that Plaintiff's left buttock pain may not be related to her scoliosis and confirmed that her fractured rod was not an issue because the exam results showed complete spinal fusion.

(Tr. 760.) Dr. Uribe referred Plaintiff to pain management for localized injections, as Plaintiff indicated that she did not want medications. (Tr. 760.) Dr. Uribe further noted that Plaintiff is able to perform activity as tolerated. (Tr. 760.)

In this case, the ALJ articulated specific reasons for discrediting Plaintiff's allegations of pain, finding that "her treatment records do not reflect that she was experiencing disabling symptoms." (Tr. 352.) Further, the ALJ recounted the medical evidence and cited to specific evidence in support of his decision. (Tr. 352–353.) Based on the foregoing, and as stated by the ALJ, the medical evidence consistently indicates that Plaintiff was improving and experienced no abnormalities in terms of her exam results, with the exception of a rod fracture in February 2013. (Tr. 296–303, 665–760.) Although Plaintiff reported pain during some follow-up visits, her exam results consistently showed no evidence of hardware failure, no evidence of loosening, no evidence of fracture, and no significant interval changes. (Tr. 665–745.) Similarly, the diagnosis and continued treatment of Plaintiff's scoliosis is not, in itself, determinative of disability, nor does it establish functional limitations resulting from the disorder. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

As such, the ALJ properly determined that Plaintiff's allegations of pain were not fully credible to the extent that they did not rise to the level of disabling, finding that "the medical evidence does not fully support the severity of [Plaintiff's] allegations." (Tr. 354.) Rather, the ALJ found that the RFC accounts for Plaintiff's limitations resulting from her impairments, including her back impairments, by limiting her to standing and/or walking for six hours in an eight-hour workday, lifting and/or carrying twenty pounds occasionally and ten pounds frequently,

and providing postural limitations. (Tr. 354.) Thus, the ALJ discredited Plaintiff's testimony only to the extent that Plaintiff alleged her pain was totally incapacitating, and this finding is supported by substantial evidence.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on July 19, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record